ABRAHAM V. VAN FLEET AND JOHN T. BIRD, ESQS.,
VICE-CHANCELLORS.

---

OSCAR BARNET and ALEXANDER TRUMBULL, surviving
executors &c. of John Barnet, deceased,

*v.*

AMELIA BARNET et al.

A purchased two lots for his friend B, and improved them at his own
cost. He agreed verbally with B, that, when B should repay him his expen-
ditures, he would convey the lots to B. To secure this agreement, in case of
his death, A made his will, in and by which he recited that he held the two
lots to secure the payment of the moneys that B owed him, and directed that

297

when B, or his representatives, should pay the moneys due to A or his executors, that the lots should be conveyed to him, and that if said payment should be made to A in his lifetime, or to his executors after his death, then A's wife should have the interest of $5,000 for life, and, at her death, the $5,000 should be divided among the children of A's sister. Before A's death, he and B ascertained that the amount due from B was $21,000, and thereupon A conveyed the lots to B, and B gave him $3,000 in cash, and B's bond, secured by mortgage on the lots conveyed, for $18,000.—*Held*, that this transaction was such a payment as the will contemplated, and that the interest of $5,000 must be paid to A's wife for life, and that the principal sum must be divided among the sister's children at the wife's death.

On bill for construction of will and direction as to distribution of assets. Hearing on bill and answer.

*Mr. C. F. Hill*, for the complainants.

*Mr. Frederick W. Stevens*, for the defendant Jane Hardie Wheeler.

THE CHANCELLOR.

This cause was heard by my predecessor in office, *ex parte*, upon the allegations of the bill alone. After he had filed his opinion upon the case as presented, which is reported in *13 Stew. Eq. 380*, under the title *Barnet* v. *Barnet*, the defendant Jane Hardie Wheeler was permitted to answer the allegations of the bill, so far as they relate to facts connected with the fifth paragraph of John Barnet's will. This paragraph is in the words following :

"I hold two lots in Mechanic street, belonging to William Compton, to secure the payment of certain moneys owing to me by the said Compton, and when the said Compton, or his legal representatives, shall pay to my executors the sum of money due me by the said Compton, I do hereby authorize and empower my said executors to execute and deliver to the said Compton, or his legal representatives, a good and sufficient deed or deeds for the same. In case the said William Compton, or his legal representatives, shall pay me the said claim in my lifetime, or shall pay the same, after my decease, to my executors, then, in either case, I direct my said executors to pay to my wife, Harriet Barnet, the interest of the sum of five thousand dollars during her natural life, the same to be paid to her semi-annually."

Barnet v. Barnet.

In the sixth paragraph of his will the testator directed that after the death of his wife the moneys, of which she was to have the interest, should be divided equally among the children of his sister, Margaret Turnbull, of whom the defendant Jane Hardie Wheeler is one; and by the eighth paragraph of this will, he provided that if he should survive his wife, the moneys apportioned to her should be disposed of in the same manner as if she should survive him.  The will was dated on the 12th day of March, 1870, and the codicil, to it, was dated on the 25th day of October, 1875.

The testator died in November, 1876, and the will and codicil were admitted to probate in December of the same year.

The allegations of the bill, touching the matter treated in the fifth paragraph of the will, were as follows:

" And your orators further show that. the. money mentioned in section five of said will as owing to the testator by William Compton, was never paid to your orators, but that your orators found among the assets of the estate of said testator a mortgage of the said lots on Mechanic street, which mortgage they caused to be foreclosed, and the land to be sold according to the decree, and at the said sale of said land your orators did bid off and bought the same for the benefit of the said estate, and have sold the said lots, and have turned the proceeds of said sale into the said estate."

Upon this part of the case, as presented by the will and the allegations of the bill, Chancellor Runyon, in one part of his opinion, said: " Among his assets was real property, which he held by way of mortgage as security for a debt due to him from William Compton.  He contemplated the payment of that debt by the mortgage, either in his (the testator's) life or after his death, and provided (for his wife's benefit) that in case of redemption $5,000 of the money should be put out at interest, and she have the interest for life."   And in another place : " Whether the fund of $5,000 and that of $8,000 would ever be raised or not depended on contingencies.  As to the former, it was dependent on the redemption of the Compton property."  * * * " Compton did not redeem."  And in yet another place he said: " Speaking generally, and taking the will and codicil together and restating the scheme, the testator intended to provide a fund

Barnet *v.* Barnet.

for his wife's support to be increased in certain contingencies which never happened."

By the answer of Mrs. Wheeler, filed since the delivery of the opinion, and by a deed and mortgage offered and admitted in evidence, it appears that the two Compton lots were conveyed to the testator in fee, one on April 9th, 1845, and the other on May 16th, 1853; that the testator and Compton were on terms of intimate friendship while they lived; that Compton was an undertaker and livery-stable keeper with but little capital; that the testator was a man of considerable means; that at different times the testator aided Compton in his business by lending him sums of money, which Compton repaid as he was able; that the testator bought the lots in question and built upon them for Compton's benefit, and allowed Compton to use the property, and verbally agreed with him that when he should pay or secure to be paid, to the testator, the moneys paid for the lots and the improvements thereon, with interest, he would convey them to him; that this verbal understanding was the only claim Compton had upon the lots at the time the testator's will was made; that after the will was made, that is, on the 15th day of March, 1873, the testator conveyed the lots to Compton for the consideration of $21,000, which, the deed recites, was in hand well and truly paid to the testator, and took from him a mortgage on the same property for $18,000, which recited that it was given to secure a part of the purchase-money for the lots; that all the cash paid to the testator by Compton at the time of said conveyance was $3,000; that the $21,000 consideration mentioned in the deed was the amount the testator had paid for the lots and the improvements on them, with interest; that Compton paid the testator more than $2,000 interest on the mortgage; that the mortgage was foreclosed after the death of the testator and the mortgaged premises sold; and that the executors realized through the mortgage, for the estate, $16,500.

Mrs. Wheeler insists that when the testator conveyed to Compton, and took from him $3,000 in cash, and a bond and mortgage for $18,000, the contingency upon which the appropriation of

the $5,000 depended happened, and that in consequence, the testator's wife being dead, she is entitled to a share of the $5,000.

It is evident that Chancellor Runyon understood that when the testator spoke, in his will, of holding two lots belonging to William Compton, to secure the payment of certain moneys &c., he referred to the mortgage spoken of in the bill, which had never been satisfied by Compton and was foreclosed by the executors after the testator's death.

The answer introduces new facts, which require the reconsideration of the question whether the contingency, upon the happening of which the $5,000 was to be appropriated, did occur.

When the will was drawn, the testator held the title to the two lots by deeds, absolute on their face. The only right Compton had in the land, was the moral obligation of the testator to convey it to him, when he should repay, to the testator, the moneys expended for them and on them. Recognizing this moral right, the testator sought, by his will, to secure a legal right to Compton, by making provision that when the moneys should be paid, after his death, the lots should be conveyed. After making this provision for the security of Compton, the testator made further provision for his wife, dependent upon the realization from Compton. He had held one of the lots seventeen and the other twenty-five, years, and had, many years previous to the making of the will, erected buildings on them. It does not appear that he has any claim upon Compton, for the moneys he thus expended, that was enforceable either in law or in equity. Compton might or might not take the lots and repay the money expended. If he did repay, the testator could well afford, in justice to others who had claims upon his bounty, to give his wife the income of the additional $5,000. While he and Compton lived they adjusted their vague, unsettled and unenforceable claims upon each other. The testator conveyed the lots to Compton, and in his conveyance acknowledged that he had received $21,000, consideration for the conveyance, and Compton, in turn, discharged the testator's claim upon him by giving him $3,000 in cash, and his bond, secured by mortgage upon the conveyed lots, for the balance of $21,000. Was this

---

such a payment as is necessary, under the will, to the happening of the contingency which will give to the $5,000 the direction insisted upon by the answering defendant? I think it is.

It is obvious that the testator intended that the contingency should happen whenever he, or his executors, should receive value for the claim he had upon Compton. He directed his executors to convey the lots to Compton when Compton should pay for them the sum due, and subsequently practically illustrated what he meant in this direction, by himself making the conveyance, when his claim was satisfied by the $3,000 cash and a new, formal, and enforceable obligation, for the payment of $18,000. The bond and mortgage were not money, but they were of value, and that value, with the $3,000 in money, satisfied and discharged the old claim and, in the sense the testator intended, paid it.